**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MEMORIAL HOSPITAL AT GULFPORT** § | | **PLAINTIFF** |
| § | | |
| **v.** § | | **CAUSE NO. 1:04CV709** |
| § | | |
| **AETNA HEALTH MANAGEMENT, INC.** § | | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING**
**IN PART AND DENYING IN PART DEFENDANT'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

THIS MATTER COMES BEFORE THE COURT on the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [16].  Plaintiff Memorial Hospital at Gulfport ("Memorial") has filed its response, and a rebuttal and surrebuttal have been filed.  After due consideration of the pleadings and the relevant law, it is the Court's opinion that the Motion should be granted in part and denied in part.

DISCUSSION

This lawsuit involves a "Health Plan Participation Agreement" between the parties detailing the rates and methods by which Memorial would receive reimbursement from Aetna Health Management, Inc. ("Aetna").  Memorial first claims that Aetna made a drafting error in the "Stop Loss" provision of a 2001 "Amendment to the Health Plan Participation Agreement," and Memorial executed the Amendment because it was unaware of the error.  Memorial also claims that the 2001 Amendment was not authorized by Memorial's board of trustees, nor does it appear on the board's minutes, and therefore the Amendment is not binding on the parties. Finally, Memorial contends that either Memorial and Aetna made a mutual mistake, or Memorial made a unilateral mistake accompanied by fraudulent conduct of Aetna.

S<span>TANDARD FOR</span> M<span>OTION TO</span> D<span>ISMISS</span> P<span>URSUANT TO</span> F<span>ED.</span> R. C<span>IV.</span> P. 12(b)(6):

The standard the court is to employ in deciding a motion to dismiss pursuant to F<span>ED.</span> R. C<span>IV.</span> P.12(b)(6) is well-settled.  The district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal* , 75 F.3d 190, 196 (5th Cir. 1996), *citing McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992).  "[T]he court may not look beyond the pleadings in ruling on the motion."  *Baker*, 75 F.3d at 197.

T<span>HE</span> F<span>IRST</span> A<span>MENDED</span> C<span>OMPLAINT</span>:

In the Amended Complaint, Memorial alleges that in 1992, it entered into a Health Plan Participation Agreement ("Agreement") with Aetna.  The stop-loss provision of the Agreement provides that Aetna will pay the per diem rate up to a $40,000.00 threshold, and 80% of any billed charges after the $40,000.00 threshold is reached.[1]  In contrast, the pre-2001 stop-loss provision obligated Aetna to pay 80% of *all* billed charges after the in-patient charges passed a threshold of $30,000.00.  The per diem rate no longer applied to any amount of the charges after the case reached the $30,000.00 threshold.[2]

According to the Amended Complaint, Memorial began negotiating a pricing amendment to the Hospital's existing agreement with Aetna in the fall of 2001.   As the parties were negotiating the pricing changes, Aetna quoted an increase in the stop-loss threshold from

---

[1]  The 2001 Amendment provides: "Should Hospital's gross in-patient charges exceed $40,000.00 (Threshold) for a single admission, those charges above Threshold shall be reimbursed at 80% of billed charges."  (Ex. "D" to First Amended Complaint).

[2]  The prior stop-loss agreement provided:  "Should the Facility's total charges per case exceed the stop loss limit of $30,000.00 per case, the per diem rate shall not be paid and instead the reimbursement rate shall be equal to 80% of the Facility's total charges for the case."  (Ex. "C" to First Amended Complaint).

$30,000.00 to $40,000.00.  The Hospital alleges that there was no indication  from Aetna that the new stop-loss provision would operate any differently from the previous one.  The written Amendment was prepared by Aetna and provided to the Hospital.  The Hospital's Board of Trustees approved the Amendment believing it to contain a stop-loss provision identical to the existing agreement, except for the threshold amount.  Memorial contends that either the parties had a meeting of the minds on this issue and the provision was incorrectly drafted, or Aetna fraudulently led it to believe that the provision would operate like the previous stop-loss provision.  Memorial seeks reformation of the 2001 Amendment stop-loss provision to conform to the version contained in the earlier version of the Agreement.

In Mississippi, a person is charged with knowing the contents of any document that he executes.  *Andrus v. Ellis,* 887 So.2d 175, 180 (Miss. 2004).  Nevertheless, Mississippi law permits reformation of instruments to reflect the true intention of the parties when (a) the erroneous part of the contract is shown to have occurred by a mutual mistake, i.e., the party seeking relief is able to establish to the court's satisfaction that both parties intended something other than what is reflected in the instrument in question, or (b) the error has arisen by the unilateral mistake of one party and that mistake is accompanied by evidence of some sort of fraud, deception, or other bad faith activity by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake.  *McCoy v. McCoy,* 611 So.2d 957, 961 (Miss.1992).

Examining the First Amended Complaint, the Court finds sufficient facts alleged which demonstrate that both parties intended something other than what was reflected in the Amendment.  Memorial alleges that not only did the parties never discuss changing the

methodology of the stop-loss provision, the parties actually negotiated an understanding that the stop-loss provision would continue to operate as it had previously.  Although Aetna challenges the existence of any evidence showing such an understanding, the Court must accept as true the facts recited in the Amended Complaint.  Memorial's allegations are sufficient to state a claim for mutual mistake.

However, Memorial's allegations are insufficient to show unilateral mistake.  Memorial alleges that its unilateral mistake was the result of fraudulent activity on the part of Aetna; specifically, Aetna's failure to point out the fact that the stop-loss provision was different from the provision the parties were currently operating under.  However, as noted above, Mississippi's standard for contract reformation requires that the fraud, deception, or other bad faith activity by the other party must prevent or hinder the mistaken party in the timely discovery of the mistake. *McCoy v. McCoy,* 611 So.2d 957, 961 (Miss.1992).  There is no allegation that by remaining silent about the changed stop-loss provision, Aetna prevented or hindered Memorial from discovering the mistake.  The provision plainly appears in the Amendment signed by all parties and could have been easily discovered by Memorial.  The Court therefore concludes that the allegations of the Amended Complaint are insufficient to state a claim for unilateral mistake.

Finally, Memorial contends that the Amendment is not valid and should be set aside for two reasons: 1) the Amendment actually approved by the Board of Trustees was different from the one they believed they were approving; and 2) the Amendment was not recorded on the minutes of the Board, and therefore it is unenforceable under Mississippi law.  *See, e.g., Bruner v. USM*, 501 So.2d 1113, 1115 (Miss. 1987).  The first contention is essentially a restatement of the unilateral or mutual mistake claims which have been discussed above.   Whether the

Amendment appears on the minutes of the Board of Trustees is a factual question which cannot be resolved in a 12(b)(6) motion.  Aetna contends that even if this allegation is true, Memorial is not entitled to set aside the Amendment on these grounds because the contract is fully performed. Memorial agrees that it terminated the contract after it discovered that Aetna would not pay claims as Memorial expected.  Mississippi authority holds that "when an *ultra vires* contract has been fully performed on both sides, neither party can maintain an action to set aside the transaction to recover what has been parted with."  *Pendleton v. Williams*, 198 So.2d 235, 238 (Miss. 1967)(quoting 7 FLETCHER, CORPORATIONS § 3497 (1964)).  *See also Watts Mercantile Co. v. Buchanan*, 46 So. 66 (Miss. 1908).  There is no allegation that Aetna failed to perform under the written terms of the Amendment, only that Aetna failed to perform as Memorial expected.  Thus, this "terminated" contract was fully performed by both parties.  The Court therefore concludes that Memorial has failed to state a claim to set aside the Amendment because of alleged unenforceability.

<u>CONCLUSION</u>

For the reasons stated above, Plaintiff Memorial has failed to state a claim for unilateral mistake (Counts Two and Three of the First Amended Complaint) or failure to authorize (Count Four of the First Amended Complaint).  Having already provided an opportunity for the Plaintiff to amend its pleadings, the Court concludes that the Defendant's Motion should be granted and these claims should be dismissed under FED. R. CIV. P. 12(b)(6).  Defendant's Motion should be denied as to Plaintiff's claim of mutual mistake (Count One of the First Amended Complaint).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [16] is **GRANTED** as to Counts Two, Three and

Four of the First Amended Complaint and **DENIED** as to Count One of the First Amended

Complaint.

   **SO ORDERED AND ADJUDGED** this the 7th day of March, 2006.

                            s/ *Louis Guirola, Jr.*
                            LOUIS GUIROLA, JR.
                            UNITED STATES DISTRICT JUDGE